The next matter, number 24-1404, Emigrant Residential LLC v. Linda S. Pinti. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. Eric Renner for the appellant. May it please the court, may I reserve two minutes for rebuttal? You may. Thank you, your honor. For oral argument, I'd like to focus on two of the issues raised in our brief. The first one being the standing issue. Massachusetts law requires that a mortgage assignment must be in writing in order to convey an interest in the mortgage. The district court recognized that there was a factual dispute as to whether the federal home loan assignment was... Counsel, in Fustolo, we held relying on Mass. General Law, Chapter 106, Section 3-305B, that the holder of a note endorsed in blank is the owner of the note. It appears to be undisputed that emigrant is the holder of this endorsed in blank and therefore is the owner. And if that is so, none of this other history is pertinent. The district court does cite the decision came out before our decision in Fustolo came out, but it does cite to the statute and does say this is one of the reasons they have standing. So what's the response? The response to that is this, is that's true as far as it goes, but holding the note is one piece of the puzzle. They also, to assert an interest, seek to discharge or strike the discharge. Why can't the owner of a note who says there's been a mistaken discharge have standing to assert the question of whether the discharge was valid or not? Because at the time, the district court credited on summary judgment our position that there was a valid assignment. I've just told you that's irrelevant under Fustolo. If they're the owner of the note, why don't they have standing to challenge whether the discharge is correct? Because the note and the mortgage are two separate things. They don't travel together. So you can have one, but you don't have the other. So the district court cited some cases for the proposition that a holder of the note has an equitable interest, an equitable right to command the holder of the mortgage to assign the mortgage back to it. But that did not happen prior to when the mortgage was discharged. So when Federal Bank in 2019 gave a written assignment of the Pinty mortgage back to emigrant, that's a legal nullity because the case law is clear that you can't assign something that has been discharged because it doesn't exist. Do you have authority that says that the owner of the note, even if not the owner of the mortgage, has standing to challenge a discharge? Maybe I'm not understanding the question. So my argument is that they don't have standing. So I'm saying that emigrant, to have standing, emigrant would have had to have a valid assignment back to it. And that couldn't have happened. It didn't happen because at the time of that written assignment in 2019, that's seven or so years after. Okay, let me turn the question. The owner of the note who is not the holder of the mortgage lacks standing. Do you have any case that says that? Well, the Ibanez case and its progeny say to us, and we cite the case law in our brief, that stands to the proposition that in order to assert an interest in a mortgage, you have to have a legal title to the mortgage. Okay, so your argument about lack of standing is even if the mortgage is security for the note, the owner of the note has absolutely no interest in the mortgage? If they have an interest in it, they have standing. Well, so they're not the real party of interest then under that analysis either because the Federal Home Loan Bank would have been the one to assert the rights. Okay, you don't have a case. We understand your argument. Why do you say that the court erred in finding the discharge had been issued by mistake? Well, a few reasons cited in our brief. And again, the posture of the case on summary judgment where all of the facts... Yeah, we sent it back so you could do more discovery, including whether the note was valid or a forgery. You no longer say that. And you say the affiant who said there was a mistake didn't do it on personal knowledge. He was a corporate official who said he had knowledge of their usual things. So what else are you arguing? On the issue of whether there was a mistake? Whether the court erred in entering summary judgment that there was a mistake in issuing a discharge. Yes, so it's the same arguments, admittedly, that we made the first time we were here in the First Circuit, which the court didn't read. No, they're not the same arguments. You've now had discovery. On the issue of whether there was a mistake, yes, the arguments are, one, the court credited Mr. Markano's affidavit and found it more credible over the testimony from Anna Sorvillo, which the court, in so doing, acted as a fact finder. Mr. Markano's affidavit was insufficient, I would argue, to establish that there was a mistake because he cited these policies and procedures, which were never introduced into evidence. So I don't know if they're written or kind of just unwritten guidelines. Okay. What else? Immigrant held the note, right? Well, that depends on what time, Your Honor. Well, let's assume they hold the note on day one. Their ability to enforce that note is certainly affected by the mortgage or the discharge of the mortgage. Their ability to, if they were seeking to foreclose? No, if they're seeking to enforce the note. I'm better off enforcing a note if there's a valid mortgage securing the note than if there isn't. Well, so maybe I'm clear on what Your Honor's asking. So the note is kind of like an IOU. You know, you can sue on the note for money, which they can't do because of the statute of limitations reasons. The mortgage is an interest of property. So, you know, now they would want to- But it secures the note. Correct. So I'm in a much better position as the note holder if there's a mortgage securing the note than I am if there's been a mortgage that's been discharged. You are. Yes, Your Honor. That sounds like standing, then. Yes, but the law stated in our brief, though, is that in Massachusetts, in order to, you know, assert an interest in a mortgage, you have to have the mortgage. And once you assign the mortgage, you no longer have an interest in the mortgage. So- Please continue. Answer the question. The whole issue on standing is that at bottom, when they wanted to get the mortgage back, it was a nullity. And if anyone had standing to seek to undo or strike the discharge, that would be Federal Home Loan Bank. But emigrant never did what was necessary. You say it's a nullity, but the fact that it's a nullity is what affects emigrant. And so doesn't that give it standing to seek to have it no longer be a nullity? Yes, but it was its own doing that it, by contract- Well, then that's some defense you'd argue on the merits, but it doesn't go to standing. Well, I think if you want to do it under a real party in interest, Rule 17 analysis, you can't have two- I mean, you're putting my client in a position where you're at risk of having both emigrant and Federal Home Loan Bank claiming an interest in the mortgage. I mean, that's exactly what Rule 17 is seeking to prevent, is two competing parties claiming an interest or seeking to enforce an interest against another party. And here my client, you know, is just an innocent bystander. And at bottom, this is emigrant's own doing. If it wanted to have the rights and the mortgage back, it could have had a written assignment before there was a discharge. That didn't happen. So I know it's maybe seems like a technicality, but that's what the law says, is to have standing, you have to have legal title in the mortgage, and they don't. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the appellee please introduce himself and the record to begin? Good morning, Your Honors. Brian Linehan from the Appellee Emeritus Residential. May it please the Court, I would like to begin with the issue of standing. As Your Honor points out, the holder and owner of the note is the party best positioned to seek these claims. And I have in my hand today, I have the original note. I had it at the commencement of this case. It was in Judge Bull's chambers in the 1952 case. And I retrieved it from the courthouse in February of the 21. The original note does bear the blank endorsement still to this day. As the Emeritus Residential has the original note endorsed in blank in its possession, it is the party that owns the note. It is the party with proper standing to seek to strike the discharge. Now, with respect to the emigrant assignment from Federal Home Loan Bank of New York, even if this Court were to defer to the defendant's position that the discharge somehow affects the ability of the emigrant assignment and mortgage, if you look at the Geffen versus Palitz case that's cited in the briefs, in that case there wasn't a post-discharge assignment and mortgage. And the Supreme Judicial Court states that once that discharge, in that case it was a fraudulent discharge, once that discharge is expunged from the record, that assignment and mortgage would take effect. But the discharge being executed and recorded before the assignment and mortgage didn't affect the plaintiff's standing in that case. That was just the SGC recognizing that once the discharge is expunged, the holder of the assignment and mortgage would then have authority to enforce the mortgage. So with respect to the issue of mistake, the mistake in this case comes from a process that was not reduced to writing. And as the panel points out, the defendants were permitted discovery after the first round of appeals, and they did not specifically ask for written policies and procedures. They didn't ask for an admission as to whether this policy and procedure was reduced to writing. They didn't even serve an interrogatory asking for a description of the process. They simply took depositions. This process is not reduced to writing. This is simply a procedure. And when the foreclosure department, or the loan servicing department, I should say, when there is a foreclosure that results in a sale to a third-party purchaser as opposed to the property being purchased back by the bank, the loan servicing department is supposed to prepare a memo that instructs the payoff department as to how the funds should be processed and applied for the loan. And importantly, when there is a foreclosure, the servicing department is supposed to include language in their memorandum informing the payoff department that the funds were received from a foreclosure and that a discharge should not be issued to the bar. And that's because the foreclosure itself extinguishes the mortgage, assuming the foreclosure is invalid. Discharges are not typically issued after a foreclosure because sometimes you have circumstances like this where the foreclosure is later deemed invalid. And so the bank doesn't want the discharge on record if there's a risk that the court may invalidate their foreclosure. Now, in this case, it's important to note that emigrant executed this discharge in October of 2012 and sent it to the borrower for recording. She didn't record it in 2012. She waited three years. And interestingly enough, she records the discharge two weeks after the SJC invalidates the foreclosure. Now, at that time, she either knew or should have known that the mortgage was in force and effect and the debt remained outstanding. She hadn't made any payments on it. There's no dispute that she hasn't made payments on the loan since 2009. And so at that point, at the very least, she could have called emigrant or emigrant's counsel to find out if the discharge should still be recorded. She didn't. She records the discharge. So that's how we get here today. So now emigrant is here seeking to strike the discharge that was recorded and executed by mistake, from Anna Sorvio's mistake, who is a mere employee in Emory. She makes this memorandum. It doesn't properly instruct the payoff department that they should not issue a discharge of mortgage, and it doesn't include the word foreclosure anywhere in that memorandum. Specifically, the memorandum instructs the payoff department that their funds were received to pay off this loan through September 13th of 2012. And so because of that representation in the memorandum, the discharge was issued to the borrower because it says right there on the face that funds were received to pay off the loan. They weren't received from foreclosure. Now, the defendants take issue with Mr. Marcano's testimony and argues that the district court improperly credited Marcano's testimony over that of Anna Sorvio. Mr. Marcano is designated as Emigrant Mortgage Company's Rule 30b6 witness. Emigrant Mortgage Company is the servicer acting on behalf of the emigrant residential plaintiff in this case. Emigrant Mortgage Company is the company that executed the discharge. And Anna Sorvio gave her testimony as a mere fact witness. She's simply an employee testifying to her own knowledge of what happened with her memorandum. She wasn't designated as a Rule 30b6 witness. Now, when an individual is designated to testify as a Rule 30b6 witness on behalf of an organization, their knowledge is, they can base it on their personal knowledge, but their personal knowledge includes the knowledge of the organization itself. And in order to gain that knowledge, the organization has to prepare them to give that testimony. So they're entitled to testify based on their knowledge and experience and their position with the company, but also based on documents that they review and conversations they may have with employees that may inform them. That's at a deposition. 30b6 controls what a corporate designee must do at a deposition. Are you saying that it applies at trial as well? Well, I'm not sure off the top of my head if it would apply to a trial. But you say it applies to a summary judgment purpose. Correct, yes. To a summary judgment affidavit, and I can't recall the case off the top of my head and I apologize, but there is a case cited in the brief that does say that when a Rule 30b6 witness executes an affidavit after giving the deposition testimony, if it's not inconsistent with the deposition testimony, the affidavit is out. And so here, Mr. Marcano executed his affidavit consistent with his deposition testimony. There are no discrepancies in there. And it's important to note, too, that when Anna Sorvio gave her deposition testimony, she didn't testify inconsistent. She did testify that she didn't think she made a mistake in this memorandum. There was another memorandum discussed in the transcript that's not relevant here. But she did say that she didn't think she made a mistake. But when asked to expand on that, she acknowledged that including the word payoff in this memorandum without further context that the funds were received from a foreclosure could result in confusion in the loan payoff part. So that statement right there is consistent with Mr. Marcano's testimony about that deposition. And in his summary judgment affidavit, it says, this is the procedure, the procedure was not followed, and that's why the discharge was issued. That's the mistake that resulted in the discharge. Now, more importantly than the actual mistake that resulted in this is the issue that Emigrant Mortgage Company executed this discharge as the holder of the mortgage. But in the Pinty II litigation before Judge Wolf, Judge Wolf specifically held that as of November 30, 2009, when Emigrant Mortgage Company executed the assignment of mortgage to ESBMH Holdings, Emigrant Mortgage Company no longer had an interest in the mortgage. That was as of November of 2009. They then executed this discharge in October 2012, several years later. They had already been divested. They were just in the mortgage at that time. And so they didn't have the authority to execute the discharge as the holder of the mortgage. Now, the statute does allow a loan servicer to execute a discharge, but here, this discharge does not comply with the statute to indicate that it was executed by a servicer. First, it doesn't mention that Emigrant Mortgage Company is the servicer of the loan and the discharge. Second, when a discharge is executed by a servicer or another agent, it has to be recorded with evidence of the agent's authority to execute that discharge. That is not included with the discharge in this case. The recorded discharge also does not include a photostatic copy of the original note, which is also required under the statute for a discharge that is executed by an agent. The other issue is unclean hands. The claim to strike a discharge mortgage under the Progressive Federal Credit Union case discusses that these claims arise out of the nature of the equitable principle of unclean hands. And here, we know that the defendant has not made any payments under this loan since 2009. She has been living rent- and mortgage-free in a very valuable condo located in Harvard Square in Cambridge for free for over 15 years. So the equitable principles that are cited in the defendant's brief about how the court erred by not considering the due equity doctrine and requiring Emigrant to compensate the defendant in exchange for an order striking the discharge, those arguments don't take into consideration the benefits she's received from years in this property without having to pay anything. Now, granted, she argues that she's paid condo expenses. She argues that she has incurred legal fees as a result of this litigation. But the condo fees are her obligation as the owner of the unit generally. That obligation does not go away if the discharge is recorded or expunged from title. That obligation does not go away if the mortgage is discharge valid on title. She still has to pay those condo fees. The issue of attorney's fees, there's nothing in the record, either at summary judgment, the appellate record, going all the way back to the 52 case, that would serve as evidence of the actual attorney's fees that Ms. Pantia has paid in this case. And without any such evidence showing that, the court was not required to consider this argument when it doesn't have the evidence before them in the summary judgment record. But even if that's the case, paying attorney's fees to litigate your defense is not necessarily an equitable basis to avoid the claim in this case, where she's already received the benefit of 15 years living in the property for free. And I can see that I'm almost out of time, Your Honor, so with that, I will rest on the briefs and ask that the court, from the judgment, withdraw. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record. He has a two-minute rebuttal. Thank you. Good morning, Your Honors. Eric Benner for the Appellant. A couple points. The discharge that Emmergreen sent to Pinty instructed her to record the discharge. She's entitled to rely on instructions from Emmergreen in doing so. I want to touch upon the equitable argument here. And I raised this question in our brief. It's just how many mistakes does Emmergreen get to make before the doors of equity are foreclosed on it? The court in Pinty, too, made this observation when it noted that there's just the carelessness nature of Emmergreen. It's fair to comply with Massachusetts law for years. Emmergreen is seeking or pursuing hundreds of thousands of dollars in attorney's fees and interest and other penalties under the mortgage that have accrued over the years due to the many several cases that it has brought in error. It's seeking to eat up the home equity that Ms. Pinty has built up over the years in her house and the money that she spent to that house. When you're balancing the equities, the district court should have considered the harm to Ms. Pinty. And putting her back in a status quo position, trying to rewind the clock is just not possible in this case given Emmergreen's position that it's entitled to all these fees, all this interest, and the home equity that's built up over the years, especially in light of just the careless nature that it's conducted its business and its failure to comply with Massachusetts law. Again, it's Emmergreen that is coming to this court and to the district court asking for equitable relief. And when giving equitable relief, the doors of equity are closed to a party that has come with unclean hands, that is not doing equity, and when the party, other side, cannot be restored to the status quo position. And so I would say that separate and apart from the standing issue, separate and apart from whether there was a mistake or not, fundamentally they're asking for equity. And under these circumstances, in this case, not in other mortgage foreclosure cases, but the facts of this case, the history of this case, I would say that the doors of equity should be closed to Emmergreen. Thank you. Thank you, counsel. That concludes argument in this case.